The next case today is Linda Felix versus the Town of Kingston et al. Appeal number 19-1774. Attorney Mason, please introduce yourself for the record and proceed with your argument. Good morning. My name is Attorney Thomas Mason. I'm representing the appellant, Linda Felix. I ask the court if I may have two minutes for rebuttal. Yes, and good morning. Good morning. May it please the court, I'm representing Linda Felix, who was formerly the Director of Elder Affairs for the Town of Kingston. She was let go of her job after she applied and was granted family medical leave back in October of 2012. And there are a number of counts in the complaint, but every one of the counts was dismissed after we went through discovery. So what I'd like to do is I'd like to call the attention to the court. How do you reconcile that her contract had an end date of December 31? With all due respect, Your Honor, she did not. It's kind of unclear on that fact, Your Honor. She received correspondence from the Town of Kingston that her family medical leave was supposed to end on the 20th of January. And before she was terminated from her job. The vote that extended her term had a December 31 end date. Isn't that correct? Pardon? The vote that extended her term had a December 31 end date. And in order to extend it further, it would have required a different, a new vote. Do you dispute that? No, I don't. I don't respect. I don't dispute that, Your Honor. What I would say, Your Honor, is that according to the record, the normal course and procedure of anybody in Mrs. Felix's position, who was an employee for the town, would have received a vote on whether or not as a matter of course, whether they would be nominated or not to the position. And as a matter of fact, according to the record, there was that discussion held at the Board of Selectmen. And in the normal course of procedure, there would have normally been some type of a vote whether or not she would be reappointed to her position or not. So I don't dispute that the term that she had ended on December 30th originally, but it was extended. We don't know exactly how it was extended or why it was extended. There was apparently never a vote on the record like it normally would have done. And according to the record, the only person who was not allowed to have a vote was Mrs. Felix. Five minutes, Counsel. Counsel, I really don't understand. What is your theory under the Family Medical Evac? I just don't understand what you're arguing. Well, first of all, she was treated differently. She faced adverse employment. She faced adverse employment actions which are taken against her because of the fact that she. What is the different treatment? Well, the different treatment there was not a vote in the record. There are four cases. There are four different situations in the record where as soon as Mrs. It said in the record that she was not going back for a job. And in the record, the town council said that Mrs. Felix directly took FMLA leave, which was and she was fired after she did not return to work because FMLA leave was granted. And it said that it was basically there's a quote from the town council basically saying that she was terminated from her position. So it looked like the town did this, took this action without without undertaking any any type of vote, which would have been the normal procedure to do this. And it made a decision without making the vote that Mrs. That Mrs. Felix was not going to be reappointed to her position as as the director of elder affairs for the for the town. It's nowhere. There's nothing in the decision which basically addresses that statement from the town council, which should have a lot of weight. There's nothing in in the judge's decision which addresses on the record where the former town council from a former town administrator says three times that immediately after Mrs. Felix submitted her paperwork and is granted family medical leave that she was not to receive that she was not going to be granted her position with the town. So this wasn't this didn't happen before Mrs. This didn't do her. Her contract was extended only six months to begin with because of the problems that were going on between your client and other members, members of the council, as well as the town administrator. I disagree with that respectfully, Your Honor. It was a normal. Excuse me. The normal vote was for a year appointment. Yes, Your Honor. And these issues between your client and these other folks were aired and they decided to extend for another six months to see if things would smooth down a little bit. The friction would be reduced. I would agree with that, Your Honor. I would agree with that characterization, Your Honor. But there hadn't been any type of determination of whether or not these issues had been addressed or not. And as a matter of fact, there isn't testimony from all of the selectmen why they voted and what they did, what they had to do. The only testimony, according to the testimony of the selectmen who testified, Mrs. Felix's future as the director of elder affairs was not was not a predetermined outcome when they made when they had the vote. So just because there was there was a six month term as opposed to a year term doesn't isn't necessary dispositive saying that Mrs. Felix was necessarily gone. And there was no nothing specifically on the record that she was going to be specifically terminated until she until she asserted her FMLA rights. And you have to take a look at it. This happened approximately right after this. There's no explanation why Mrs. Felix didn't at least get a vote. Other than the proximity in time. It seems to me that the defendants have come back with, well, we did it because there was all this friction and there was this terrible relationship between her and the and members of the board or council. What can you what do you have to point us to that would would show that that is just a pretextual ruse for their real motivation, which was the fact that she asserted her family medical leave back rights? Well, well, I think we have this positive test. Pardon the answer. Yes. Yes. We have dispositive testimony from the selectmen who were directly involved with the vote, who were the quote hostile, who were the hostile members of the committee. And we also have the direct testimony of the former town administrator who is working as an assistant to the permanent town administrator at the time, Nancy Howlett, who specifically lays out who specifically lays out what had happened. Basically, there was no indicator that Mrs. Felix's job was over until she applied for FMLA protection. And there's no reason why she shouldn't receive any kind of vote. Also, very quickly, I do want to ask you a question. In your brief, it seems to me the theory that most clearly emerges from your briefing is a claim under the Massachusetts disability discrimination law. So what what can you concisely articulate what your theory is and particularly how would you characterize as the improper inquiry about her disability status might have factored into an act by the town that violated the Massachusetts disability discrimination statute? What is your theory there? Well, your honor, by any by any measure, by any by any measure, Mrs. Mrs. or anything like that, if she was gone by January 20th and she applied for her job, why was the town asking for information about her disability status at that at that particular time when when they didn't ask that to anybody else? I think it's pretty clear, according to all guidance, all law, anything like that. That's that's something that's strictly prohibited under the law. You don't ask somebody about the disability if you are applying if you are applying for a job. OK, even if that was an improper inquiry, you still have to show that she was harmed as a result of that improper inquiry. What is the harm? Well, the harm was is that is that she was she wasn't hired. That's that's the harm. And she was terminated. That's the harm. OK, and what is the what is the evidence that that decision not to hire her was because of the because of the perception that she was disabled, as opposed to this long history of conflict between her and the judge Thompson mentioned, the town administrator and the other members of the council? But what what allows you what would allow your client to overcome that explanation of the town that that's why she was not hired? The town council's own statement in May after this had happened, basically saying that she was fired after she did not after she failed to return to work at when after she was given family medical leave. That's what that's what the town council. That's what the town council actually said. And the town council had, if you take a look at the record, had been involved with this particular situation all the way back when this whole, you know, situation started to occur when she was reappointed to a six month position in May 30th, 2012. So, so this is the I don't I don't see how the town council's statement would official statement can be reconciled. And I don't see how the statements of the town administrator can be reconciled with can can be reconciled with the fact that her disability and are applying for FMLA leave was related to her her termination. If, if, if the town had taken a vote and put it on the record and created, then, then there may be, then that would create a different argument, but there's nothing on the there there is some evidence of conflict, but there isn't any evidence about what particular there are five select men, and there's no evidence about what each of those particular select men, how they would have voted if it was put to a vote. And had to put on the record, whether she would be reappointed or not, you do all you have to do is you have to look at the plausibility. Mr. Mason was your clients last day of pay, December 31 or January 20. I believe your honor is that she was on the payroll, she was on the payroll on getting sick time as of January 20. Was there practice that if somebody's position was not going to be renewed. That there was a vote on that. Yes, Your Honor. This is there something in the record that supports that. Yes, Your Honor, the statement of Richard Arruda, who was one of the select men at the time, and the statement of Nancy Howlett, who'd been employed by the town for over two decades, and, and, and had served as town administrator at various times. What was it, what was her testimony. Her testimony was that in her experience, and her knowledge of 25 in in many years working for the town. She had never seen somebody in Mrs. Felix's position, who was an employee for the town not have a revote on whether or not they would be appointed or not. That wasn't my question. The question is, was it practice to have a specific vote not to reappoint. Uh, wasn't it. No, it's never happened before it's a. My understanding, Your Honor, is this had never happened before. Okay. All right. Any other questions. Thank you. Attorney Mason, please mute your audio and video. Attorney Keston, please unmute your audio and video. And proceed with your argument. Good morning. My name is Leonard Keston, and I'm employed as an attorney, and I represent the Appalachians in this case. And I want to thank you for the honor of appearing before it always is for those of us that live in the trial court. And secondly, I want to let you know that, well, I love New Hampshire, I adore Maine. Um, there's three, there are three entities involved, involved in this, in this case. There's the Council of Aging, which does not have hiring and firing power, but is the essentially oversees the Director of Elder Affairs, which Ms. Felix was. And there's a Board of Selectmen, who are the appointing authority for the Director of Elder Affairs. The plaintiff's whole case, frankly, doesn't make sense. The so-called adverse employment action occurred on May 21st, 2013, actually began on May 14th, 2013, when the Council of Aging recommended to the town that it not reappoint her to the Board of Selectmen. That was on May 14th, 2013, before there's FMLA, before there's any suggestion of any potential disability or problems with Ms. Felix, other than the long-standing documented history of her not being able to get along with the Council of Aging, who she had to work with. On May 21st is when the Board took the vote, which you could argue, if you had a case, that that was an adverse employment action, because rather than being appointed for a year, they cut it to six months. So the Board of Selectmen sort of split the issue, the Council of Aging didn't want her appointed at all, and they said, we'll give her six months, see what happens. And then, as you can see, the record is uncontroversial. Tension builds between her and the Council of Aging, Ms. Felix, the Council of Aging. It does not improve. It gets worse. And she decides, after a meeting that particularly bothered her in October, all of a sudden she goes out. Clearly, any decisions by the town had nothing to do with her going out on FMLA or claiming that she had emotional issues. And her employment ran out on December 31st. I gather it ran out before the end of her family medical leave-back period, is that correct? Yes, Your Honor. Yes, she had family leave-back until January, I believe. Right. And the issue was, I mean, So was she paid through the 31st or through the 20th? I heard your question, and I'm not sure. I know it's not in the briefs. I'll be happy to supplement. I can't answer that question. I'm not sure. But typically family leave-back, you're only paid if you have enough sick time. Family leave-back does not give you paid leave. It gives you leave. But you use your sick time. Once that runs out, you're still on the leave, but you're no longer being paid. Counsel, isn't it apparent that Town Council, in some communications with Mrs. Felix, did not understand that during the period of her family medical leave-back, her employment would terminate as a matter of contract. He seemed to not understand that. Isn't that correct? Absolutely correct. Both counsel didn't understand it until February 6th is when Town, I think it's Labor Council, figured out that she had actually, she was not even an employee anymore. But there's no contract. Nobody entered into a contract. He misapprehended. There's no question that her employment ended on December 31st. There's also no question that the ending of her employment happened on May 21st, when they set a term on it. She was never terminated. There was no vote by the defendants to terminate her. Could you explain what the usual voting processes would be? Is the vote to extend only to the 31st, that would have been the only vote, or would there have been another vote not to renew? There's never a vote not to renew. What there is is a vote to renew. So somebody has to bring a motion, say. I mean, in this election, I vote to renew Lenny Kesten as our lawyer. I vote to renew Linda Felix. That never happened. So what happened was, you know, the record is clear. There's problems. There are issues with her employment. The Council on Aging recommends no reappointment, just let her go now, and there would not have been a vote. Had they decided in May at that point that they're not going to reappoint her, they wouldn't take a vote not to reappoint her. Somebody would have had to move to reappoint her in order to have a vote. There's never a vote not to reappoint. There's no history of that. It's not the norm. I mean, that is what usually happens is either there's no vote and your employment ends or there's a vote to reappoint that fails. I mean, I have a – Mr. Kesten, there was something in the record about a hiring freeze going on around this time. Does that impact what was going on at all? No. Okay. No, the hiring freeze does not. I mean, the board could have, prior to December 31st, voted to reappoint. Maybe this is unfair to ask you. Maybe Mr. Mason can address this in rebuttal. I'm still trying to understand what his theory is under the family medical leave act. Is his theory, as you understand it, that had it not been for the fact that she had requested family medical leave, when her contract, with respect to her job with the elder council when it expired, that she would have gotten a vote as to whether or not to extend it, had it not been for the fact that she had requested the family medical leave. Is that the adverse action that she did not get a vote that she would otherwise have gotten because she had asked for the family medical leave? Is that the theory as you understand it? Well, Your Honor, as I understand it, I mean, what he's, I think, I mean, the only way the plaintiff can win this case is to show that but for her applying for FMLA, that the board of selectmen would have voted to reappoint her. Yeah. It's not just a vote. If they'd voted and they didn't reappoint her, if there was such a vote, you know, let's say one of the selectmen brought the vote and it failed, 3-2, 4-1, 5-0, then that could have been construed as an adverse, I suppose you could have argued that's an adverse employment action, had they had the vote. But I believe in order to win, he has to prove that he had to have some evidence that but for the FMLA, she would have been reappointed. It's not just that the lack of a vote doesn't do anything. Right. Which is, and I agree with you, we've had to parse, try to figure out what exactly is this argument. But as I say, I mean, there's no, there's not ever an affirmative vote not to reappoint. So not to reappoint unless somebody brings a motion to appoint. Nobody brings a motion. I'm sorry. Yes, Your Honor. Go ahead, please. Go ahead. There's no history of anyone bringing a vote not to reappoint. Because if you're not going to reappoint, you don't have to do anything. So what about the disability discrimination claim? The trial court in this decision goes to great lengths to dismiss the significance of that inquiry about her, does she need an accommodation, is she still disabled? I mean, there seems to be an acknowledgement that that inquiry should not have been made. Why doesn't that, and then in the wake of that as part of the hiring process to find someone new or perhaps put her back in that job, that she doesn't even get an interview. Why doesn't that at least maybe have the prima facie, there's a prima facie case of disability discrimination there. They established that she still has, she's still suffering from the kind of disability that forced her to take the family medical leave and she doesn't even get an interview for the job that she used to have. Why isn't there at least a prima facie case of disability discrimination there? Because, Your Honor, I mean, these are unique facts. I mean, the statute that says you can't ask people if they're disabled, obviously if you apply for a job, you can't. Unless they raise it, right? In this case, she had raised it. She raised the issue when they thought she was still mistakenly employed, right? She raised the issue of an accommodation. There was a communication from her lawyer to the town council about a possible accommodation. Town council asked what kind of accommodation and they never followed through with it. But they put it into play, the other side. Okay. But the inquiry from the town, is this still a problem? Are you still disabled? I mean, just because she may have raised it before as part of a different process, did that entitle the town to say, okay, is this still a problem? Are you still disabled? We need to know that if we're going to consider your application for the job. I would advise the town if it was me, not to have asked that question. But I suggest you it caused no harm whatsoever. There's no evidence that that played any role in the decision whether or not to give an interview. Thank you for attention. Thank you. Take care. Attorney Keston, please mute your audio and video. Attorney Mason, please unmute your audio and video and proceed with your rebuttal time. Thank you. Thank you very much for your consideration today. Thank you to the court and the staff. I just have a couple of points that I would like to make, is that at this particular stage in the proceeding, we don't have to, we just have to make the case of plausibility. And we have evidence, evidence on the record, pretty strong evidence, that my client was treated differently because of her disability. What was her disability? High blood pressure, anxiety, and heart issues. And that was put on the record, Your Honor. When she filed for her FMLA leave, there was a record provided to the town, you know, what her exact condition was at that time. So under your 151 claim, she would be defined as disabled based upon three different categories. Which one are you alleging? That she was unable to work in a broad class of jobs, that she had a clear history of a disability substantially impacting her life, or that she was My theory is that she could work there, but she needed some type of accommodation. So she needed an accommodation. So she had a condition requiring an accommodation for that particular job, but that the subsequent job, she didn't require an accommodation. That's not true, Your Honor. I wouldn't say that that's demonstrated. She had a part-time job, and her hours were limited. So if there's an informal type of communication between the subsequent employee, then that wouldn't be a fact that she didn't need an accommodation for other jobs. What was it about her subsequent job that did not require an accommodation? The limited work hours? A limited work hours, less stressful environment. All right, any other questions? That concludes argument in this case. Attorney Mason and Attorney Keston, you should disconnect from the hearing at this time.